IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY R. SIMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 3:09cv366-CSC |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

**I. Introduction**

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq. and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq. alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3). Pursuant to 28 U.S.C. § 636(c), the parties have

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

consented to entry of final judgment by the United States Magistrate Judge. Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be reversed and remanded for further proceedings.

## II. Standard of Review

Under 42 U.S.C. § 423(d)(1)(A) a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

> To make this determination[2] the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[3] *McDaniel v. Bowen,* 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction.** The plaintiff, Kimberly Sims ("Sims") was 41 years old on the date of onset and has a limited education. (R. 21). Her prior work experience includes work as a cloth inspector and a general inspector. (R. 20). Following the hearing, the ALJ concluded that the plaintiff has severe impairments of "hypertension, obesity, emphysema with recurrent bronchitis, and lumbar degenerative disc disease." (R. 14-15). The ALJ further concluded

---

cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

that Sims' depression and anxiety were not severe impairments. (R. 15). The ALJ concluded that the plaintiff was not disabled because she could return to her past relevant work as a general inspector. (R. 20-21). In the alternative, the ALJ concluded that Sims had the residual functional capacity to perform other work in the national economy, and thus, she was not disabled. (R. 21).

    **B. Plaintiff's Claims.** As stated by the plaintiff, the primary issue is as follows:

> [I]t is the plaintiff's position that medical evidence from treating sources and from consulting medical sources dictate a conclusion that the plaintiff be found disabled while the contrary testimony from the "medical expert" testifying at the evidentiary hearing finds no support in the medical evidence of record.

(Pl's Br. at 3).

## IV. Discussion

Although the plaintiff presents issues related to this court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and by substantial evidence, *see Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987), the court pretermits discussion of the plaintiff's specific arguments because the court concludes that the ALJ erred as a matter of law and thus, this case is due to be remanded for further proceedings.

An administrative law judge has a duty to develop a full and fair record. *Kelley v. Heckler,* 761 F.2d 1538 (11th Cir. 1985). As will be explained below, the court concludes that the ALJ failed in this case to fully and fairly develop the record concerning the severity of the plaintiff's lumbar degenerative disc disease, and the concomitant effects of that

condition on her ability to work.

The plaintiff has a well-documented history of chronic back pain from her lumbar degenerative disc disease. (R.128, 197-201, 204, 208, 210-11, 214-16, 218-19, 232-33, 236-37, 240-41, 244-45, 248-49, 252, 256-57, 260-61, 264, 268-70, 280-81, 284-85, 288-89, 292-93, 296-97, 300-02, 307, 310-11, 314-15, 318-19, 322-23, 326-27, 334-35, 33839, 342-43, 346-47, 350-51, 355-61). On August 21, 2000, the plaintiff presented at the Lake Martin Family Medicine clinic complaining of back pain. (R. 219). In September 2001, Sims complained that she had fallen and hurt her back. (R. 218). On February 13, 2001, x-rays of the plaintiff's spine indicated

> anatomic alignment of the lumbar spine. There is T12-L1 disc space narrowing with anterior osteophytes at this level. There is also some mild disc space narrowing at L5-S1. The pedicle and spinous processes appear intact at each level . . . The SI joints are unremarkable.

(R. 435). The reviewing physician diagnosed "[d]egenerative changes at T12-L1. No acute abnormality noted on the lumbar spine." (*Id.*). Sims complained at the clinic of back pain on February 28, March 26, June 5, September 18, and September 27, 2002. (R.210-11 & 214-16). On May 27, 2003, she complained at the clinic that her back and legs were hurting. (R. 208). On August 1, 2003, she complained at the clinic that the pain in her back, gluteal area and legs was severe – eight on a scale of 1 - 10. (R. 204). On August 5, 2003, she had an MRI and x-rays were also taken. (R. 225, 372-73, 449-50). The MRI revealed

> 1. Minimal gibbous angulation at T12-L1 associated with the minimal anterior distant compression at T12. This probably is not of significance regarding the cord, even though the cord drapes over this

5

>   area, there is a wide thecal sac/canal at this site.
> 2. Minimal degenerative disk change at L5-S1.
> 3. No spinal stenosis. No HNP. No sign of tumor or any other significant finding.

(R. 225, 373, 449).

X-rays revealed "[d]istant anterior compression of L1." (R. 372, 450). She continued to complain to Dr. Bartel of back pain. (R. 200-01). On September 13, 2003, Dr. Bartel noted that Sims presented "with an acute flare up of her lower back problem launching a boat with acute discomfort in the lumbar area with some numbness and paraesthesia involving the right hip and leg." (R. 199). She was treated with medication and referred to Dr. Patrick Ryan. (*Id.*)

Sims continued to complain of back pain. On November 11, 2003, she presented to the emergency room at the Russell Medical Center complaining of back pain. (R. 363, 365, 368). Admission forms indicate that a work related back injury. (R. 371, 442-43). X-rays indicated "[n]o acute abnormality and no significant interval change" since the earlier x-rays in August. (R. 367, 448).

Beginning in July 2003, Sims was also treated by Dr. Bowen. She presented to him on July 25, 2003, complaining of back pain the lumbar spine, "radiat[ing] down both legs." (R. 237). Dr. Bowen diagnosed Sims with lumbar disc syndrome. (R. 240). Dr. Bowen saw Sims on August 26, September 16, October 20, November 17, December 15, and December 26, 2003, complaining of lower back pain radiating down her legs. (R. 232-33, 236-37, 241, 245, 248, 249, 252). In 2004, Sims complained to Dr. Bowen of back pain on January 23,

February 11, February 20, March 17, March 26, May 11, June 7, July 6, August 28, September 21, November 12, December 10, and December 30. (R. 256-57, 261, 268-70, 280-81, 284-85, 289, 292-93, 296, 300-02, 315, 318). In 2005, Sims complained to Dr. Bowen of back pain on January 24, and of increased back pain on February 23. (R. 311, 307). She presented to Dr. Bowen complaining of back pain on March 15, April 5, and April 25. (R. 327, 323, 319). On June 3, 2005, she complained of left hip pain and numbness. (R. 339). On July 21, 2005, Sims complained to Dr. Bowen of pain in her left hip, that her legs were weak and numbness on her buttocks. (R. 335). Dr. Bowen attributed these symptoms to her poorly controlled lumbar disc disease. (R. 338). She continued to complain on August 8 and November 21, 2005 of back pain. (R. 334, 343).

Sims presented to Dr. Bowen on January 11, March 1, April 21, June 7, August 8, October 4, and November 17, 2006, complaining of back pain. (R. 351, 347, 355-58). On April 21, 2006, Dr. Bowen noted "some decreased range of motion in her lower lumbar spine." (R. 355).

On March 9, 2007, Dr. Bowen diagnosed Sims with "Failed Back Syndrome" (R. 359). Dr. Bowen continued to treat Sims with pain medication throughout 2007 and 2008. (R. 358-61, 440, 456-57).

On November 9, 2007, Dr. Bartel conducted a physical evaluation at the request of the Social Security Administration. (R. 375-84). Sims complained of pain in her lower back and legs. (R. 375). She reported her pain, on a scale of 1 - 10, was an eight (8). (R. 376).

She takes Lortab for the pain. (*Id*.) She had tenderness in her legs as well as "tenderness [and] spasms in LS spine [and] sacroiliac areas w[ith] radiation into [her] legs." (R. 379). She exhibited a limited range of motion in her back. (*Id*.) Dr. Bartel noted that Sims had difficulty "getting on & off exam table due to back & leg pain." (*Id*.) She had difficulty with Romberg, squat and rise, bending and twisting. (R. 379-80). Dr. Bartel did not order any additional x-rays or MRIs.

Finally, on September 11, 2008, Dr. Bowen's medical notes reflect that Sims "[s]till refuses any lab or x-ray studies because of lack of insurance." (R. 461).

In discrediting the plaintiff's pain testimony, the ALJ

> reviewed the claimant's available medical history and concludes that the record does not reflect pathology or a treatment history that supports the symptoms she has reported in this adjudication. The nature and frequency of the claimant's outpatient medical care with Dr. Bowen, her treating physician, during the period relevant to this adjudication has been infrequent and inconsistent with the existence of disabling impairments. Dr. Bowen's chart notes do not corroborate that the claimant has made consistent reports of symptoms at the level of severity alleged in her testimony. The claimant underwent a lumbar MRI on August 5, 2003, and a lumbar spine x-ray on November 17, 2003, but both imaging studies revealed only mild abnormalities.

(R. 18).

First, the ALJ is simply wrong about the frequency and consistency of Sims' treatment. The medical records demonstrate that between August 21, 2000 and July 3, 2008, Sims was seen by Dr. Bowen or the Lake Martin Family Clinic fifty-seven (57) times. (R. 197-201, 204, 208, 210-11, 214-16, 218-19, 232-33, 237, 241, 245, 249, 256-57, 261, 268,

269-70, 280-81, 285, 289, 293, 297, 301, 307, 311, 315, 319, 323, 327, 334-35, 339, 343, 347, 351, 355-61).

More importantly, however, pursuant to 20 C.F.R. § 416.917, the ALJ is required to order additional medical tests when the claimant's medical sources do not give sufficient medical evidence to make a determination as to disability. The ALJ failed to obtain updated MRIs or x-rays or otherwise develop the medical evidence regarding Sims' *current* lumbar degenerative disc disease. Although the plaintiff was sent for a consultative physical examination, it is apparent from the record that no recent x-rays or MRIs were obtained to determine the extent of the plaintiff's lumbar disc disease. The court is at a loss as to why the ALJ would order a consultative physical examination without also requesting additional imaging be done, particularly in light of the nature of the plaintiff's complaints. *See Baker v. Bowen*, 886 F.2d 289, 292 (10th Cir. 1989) (failure to obtain x-rays particularly a problem when claimant is complaining of arthritis, a disease commonly diagnosed by x-rays); *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000) ("fail to see how the ALJ could have properly assessed the extent of arthritis without updated x-rays"). Although the medical records demonstrate numerous trips to her treating physicians by the plaintiff complaining of pain, the ALJ took no further steps to explore the nature of the plaintiff's current degenerative disc disease by securing updated MRI testing or x-rays. Rather, the ALJ relied on imaging from 2003 to support her conclusion that Sims is not presently disabled and has not been disabled since 2007.

Moreover, the ALJ also had a medical expert testify at the administrative hearing. (R. 36-37). Despite an onset date of May 28, 2007, the medical expert testified that his opinions were based on the 2003 MRI. (R. 36). The medical expert also admitted that Sims had not had a diagnostic work up since 2003, and that her degenerative disc disease could have "gotten much worse" since that MRI. (R. 36-37). There is sufficient evidence from which the ALJ should have concluded that it was necessary to require recent imaging of the plaintiff's lumbar degenerative disc disease before rendering a decision regarding her disability. The ALJ's failure to fully develop the record by failing to obtain a current MRI or x-rays requires that this case be remanded for further proceedings. *See Holladay v. Bowen,* 848 F.2d 1206, 1209 (11th Cir. 1988) (ALJ is not required to order consultative examination unless the record establishes that such an evaluation is necessary to make informed decision); *Reeves v. Heckler*, 734 F.2d 519 (11th Cir. 1984) (error for ALJ not to order consultative examination where the evaluation is needed to make an informed decision).

The court also notes that the ALJ discounted the severity of Sims' pain because "she was unwilling to undergo any laboratory or diagnostic studies due to her lack of health insurance, nonetheless, no clinical findings of lumbar abnormality were reported upon physical examination." (R. 19). The plaintiff testified that she could not afford referral to a specialist or surgery because she did not have any insurance. (R. 30). The medical records reflect that Sims's lack of insurance influenced her treatment. (R. 157, 456). While failure

10

to seek treatment is a legitimate basis to discredit the testimony of a claimant, it is the law in this circuit that poverty excuses non-compliance with prescribed medical treatment or the failure to seek treatment. *Dawkins v. Bowen*, 848 F.2d 1211 (11th Cir. 1988).

"Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000). In this regard, the ALJ failed in her duty to develop the record.

> The SSA is perhaps the best example of an agency that is not based to a significant extent on the judicial model of decisionmaking. It has replaced normal adversary procedure with an investigatory model, where it is the duty of the ALJ to investigate the facts and develop the arguments both for and against granting benefits; review by the Appeals Council is similarly broad. *Id*. The regulations also make the nature of the SSA proceedings quite clear. They expressly provide that the SSA "conducts the administrative review process in an informal, nonadversary manner." 20 C.F.R. § 404.900(b).

*Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000). Based on the inadequate development of the record, the court cannot determine whether the ALJ's conclusion that the plaintiff is not disabled is based on substantial evidence.

## V. Conclusion

Accordingly, this case will be reversed and remanded to the Commissioner for further proceedings consistent with this opinion. It is further

ORDERED that, in accordance with *Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1278 fn. 2 (11th Cir. 2006), the plaintiff shall have **sixty (60)** days after she receives notice of any amount of past due benefits awarded to seek attorney's fees under 42 U.S.C. § 406(b).

*See also Blitch v. Astrue*, 261 Fed. Appx. 241, 242 fn.1 (11th Cir. 2008).

A separate order will issue.

Done this 26th day of July, 2010.

                                         /s/Charles S. Coody
                                  CHARLES S. COODY
                                  UNITED STATES MAGISTRATE JUDGE